TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00532-CR






Paul Frank Weir, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 53,126, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 A jury found Paul Frank Weir guilty of possession of more than one gram but less
than four grams of methamphetamine. See Tex. Health & Safety Code Ann. §§ 481.102(6),
481.115(c) (West Supp. 2003). The court assessed sentence at ten years in prison. He contends that
the evidence is factually insufficient to support the verdict. We affirm the judgment.

 It is undisputed that Weir possessed a cigarette box that contained one to four grams
of methamphetamine. The only disputed issue is whether he knew what the box contained. Four
witnesses testified regarding this issue; other witnesses at trial testified regarding issues not disputed
on appeal. Three witnesses testified from their personal knowledge of the events surrounding Weir's
arrest: Milton Shelton, a Wal-Mart loss prevention officer; Manfred Stinehour, an off-duty Killeen
police officer who worked at Wal-Mart; and Weir. The fourth witness, Temple police officer Dan
Kallus, testified generally about the manufacture of methamphetamine and behaviors of individuals
associated with its production and distribution.

 When conducting a factual sufficiency review, we do not view the evidence in the
light most favorable to the verdict. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). 
Instead, we consider all evidence in a neutral light while deferring to the jury as the sole judge of the
weight and credibility given to witness testimony. Id. at 7. We will set aside a verdict only if the
proof of guilt is so obviously weak or so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Id. at 7; Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996);
Shelton v. State, 41 S.W.3d 208, 211 (Tex. App.--Austin 2001, pet. ref'd). A court of appeals
should reverse on factual insufficiency grounds only when the jury verdict is manifestly unjust,
shocks the conscience, or clearly demonstrates bias. Clewis, 922 S.W.2d at 135.

 Shelton testified that Weir was one of the first persons he apprehended while working
for Wal-Mart. Shelton testified that on April 23, 2001 he saw Weir put the contents of three boxes
of Suphedrine (1) tablets in his shirt sleeve. Suphedrine is designed to be used as an antihistamine, but
can be used to manufacture methamphetamine. Wal-Mart limits customers to three boxes per
purchase in order to deter manufacture of methamphetamine; people wanting to make
methamphetamine therefore often steal drugs such as Suphedrine. Shelton testified that Weir caught
his attention because he had Suphedrine and because he was looking around and leaning over on his
shopping cart. Shelton said that Weir walked around the store and pulled the sheets of tablets out
of the boxes, put the sheets into his shirt, and put the empty boxes into a freezer case behind other
products. Weir paid for other products but left without paying for the Suphedrine. Shelton
apprehended him outside the store; Weir resisted returning to the store. Shelton removed sheets of
Suphedrine tablets from Weir's shirt. Pursuant to company policy, Shelton then explained to Weir
that he was banned from entering any Wal-Mart; if he entered the store again he would be cited for
criminal trespass. The State introduced a statement to that effect signed by Weir. In rebuttal,
Shelton testified that Weir had more than $800 in his possession at the time of the shoplifting arrest. 

 On November 10, 2001, Shelton was working in the same Wal-Mart with fellow
officer Stinehour. Shelton recognized Weir and told him he would be arrested for trespass. He took
Weir to the office at the front of the store. Weir was upset at being detained because the shoplifting
charges were dropped. Shelton testified that Weir was wearing a button-down shirt with a pocket
on the left chest; Shelton could not remember if the shirt had a pocket on the right side. Shelton
testified that Stinehour found a cigarette box in Weir's shirt pocket; the box contained a white
powdery substance in a plastic bag. Shelton indicated that Weir said that a friend gave him the
cigarette box, but Shelton testified that Weir did not give the name or any information about that
person. Shelton testified that he did not see anyone accompanying Weir in the store. Shelton also
testified that he found a metal spoon in Weir's boot.

 Stinehour testified that Weir's shirt had pockets on both sides of the chest, but did
not recall whether the one on the right contained cigarettes. He said that Weir's demeanor did not
change noticeably when Stinehour found the plastic bags containing a yellowish crumbly substance
in the cigarette box in appellant's left shirt pocket. Stinehour testified that he routinely pursued
evidence of others involved in crimes when given that evidence by an arrestee, but that Weir gave
him no specific information to pursue such as names, addresses, or descriptions of anyone else
involved in the incident. Stinehour testified that the only specific information Weir gave him is that
the cigarette box and its contents had been given to him in the parking lot and were not his.

 Kallus testified generally about the manufacture and trafficking of methamphetamine.
Methamphetamine is derived from pseudoephedrine and other substances. About 70-75 tablets of
pseudoephedrine will yield a gram of methamphetamine, which will sell for about $100; 1800
pseudoephedrine tablets will yield about an ounce of methamphetamine. Because stores limit
customers to buying three to six boxes of pseudoephedrine at once, people assisting the manufacture
of methamphetamine will often steal the tablets in order to gather the necessary amounts quickly. 
He testified that suppliers and methamphetamine cooks often have long-term relationships, and that
methamphetamine addicts almost never quit on their own. He admitted that pseudoephedrine has
a legitimate purpose--as an antihistamine--for which it is commonly used, and that purchasing it
in small amounts, or even stealing a single package would not necessarily mean involvement in the
methamphetamine trade. Kallus admitted that he had no personal knowledge of Weir or the facts
of this case. 

 Weir testified that his April 2001 arrest was based on misunderstandings and a bad
sequence of events. He said he was having some personal problems, was tired from working, and
had bad allergies. He picked up one box of antihistamines, opened the package, took two pills, and
began shopping. Sensing that he was being followed, he put the box into the freezer case; on cross-examination, he conceded that he put the partially used sheet of pills into his clothing. He denied
hiding other pills in his shirt. He also did not recall being banned from the store. He testified that
his shoplifting charge was dismissed.

 Weir testified that he stopped by the Wal-Mart in November 2001 while returning
to his home in Copperas Cove from Belton where he was doing some welding work on a tractor used
by workers who were reconstructing his driveway. Weir said he was wearing a shirt with snaps
rather than buttons so that, if the shirt caught on fire while he was welding, he could quickly shed
it. Several young men gave Weir a ride home from the Belton worksite. They stopped to buy some
items at the Wal-Mart. Weir said he was arguing with Johnny, one of the passengers who had sold
him a truck that turned out not to belong to Johnny; Weir said he did not know Johnny's last name
and had no idea that Johnny was one of the biggest methamphetamine dealers in Bell County. 
Another boy, possibly called Eddie, asked Weir to carry a box of cigarettes into the store because
Eddie's shirt did not have pockets. Weir never looked inside the box. Weir said he was in line at
the register to pay for a purchase when Milton interceded to arrest him for trespassing.

 Weir offered explanations for indicia of guilt. Weir explained that he had $438 in
cash on him in November because he had just been paid for welding, not because of drug sales. He
explained that he had a plastic (2) spoon because he had been eating take-out food when he got a ride
home. He testified that he did not give the officers the names of his companions because he did not
know their names; he testified that he did describe them and their vehicle. He testified that the
officers disregarded his story. He admitted that he might not have believed his version of events if
he had not lived it.

 Although Weir presented a version of events consistent with his innocence, the other
witnesses presented a version of events consistent with his guilt. Resolving this conflict in evidence
required the jury to make credibility choices, and they chose to believe the State's witnesses. We
cannot substitute our judgment for the jury's choices. See Johnson, 23 S.W.3d at 7. Nor can we
reverse the judgment unless it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong, manifestly unjust, shocking to the conscience, or clearly the result of bias. See
Clewis, 922 S.W.2d at 129, 135. Weir undisputedly possessed the box of methamphetamine and had
engaged in behavior consistent with involvement in the methamphetamine trade. Viewing the
evidence neutrally, we find that the jury could make credibility choices and determine beyond a
reasonable doubt that Weir knowingly possessed the methamphetamine. 

 We overrule his sole point of error and affirm the judgment.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: April 24, 2003

Do Not Publish
1. Suphedrine is the generic equivalent of Sudafed; both products contain pseudoephedrine.
2. The inventory of his belongings completed upon his arrest does not specify the material
of the spoon. Shelton testified that the spoon was metal.